UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PROTECT THE PUBLIC'S TRUST, | |
| Plaintiff, | |
| v. | Civil Action No. 23-3302 (CKK) |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

STEPHEN DEGENARO
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia

May 3, 2024

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD......................................................................................................... 4

ARGUMENT ..................................................................................................................... 5

     I.     THE DEPARTMENT'S *GLOMAR* RESPONSE WAS PROPER UNDER
          EXEMPTIONS 6 AND 7(C) ................................................................................. 6

          A.     Any Responsive Records Would Be Law Enforcement Records............... 8

          B.     The Subjects of Plaintiff's FOIA Requests Have a Strong Privacy Interest
                 in Any Potential Responsive Records........................................................ 10

          C.     Plaintiff Fails to Identify a Significant Public Interest in Disclosure ....... 12

          D.     The Privacy Interests in Any Responsive Records Outweighs Any Public
                 Interest in Their Disclosure...................................................................... 15

CONCLUSION................................................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*,
   74 F. Supp. 3d 158 (D.D.C. 2014) ............................................................................................ 9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................................. 4

*Banner Health v. Price*,
   867 F.3d 1323 (D.C. Cir. 2017) .............................................................................................. 13

*Beck v. Dep't of Just.*,
   997 F.2d 1489 (D.C. Cir. 1993) ........................................................................................ 14, 15

*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011) .......................................................................................... 8, 9, 14

*Boyd v. Dep't of Just.*,
   475 F.3d 381 (D.C. Cir. 2007) ............................................................................................... 15

*Brayton v. Off. of U.S. Trade*,
   *Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ........................................................................................ 4

*Cawthon v. Dep't of Just.*,
   Civ. A. No. 05-0567, 2006 WL 581250 n.7 (D.D.C. Mar. 9, 2006) ........................................ 14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................................. 4

*Church of Scientology v. Dep't of Army*,
   611 F.2d 738 (9th Cir. 1979) .................................................................................................... 7

*Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*,
   746 F.3d 1082 (D.C. Cir. 2014) .............................................................................................. 10

*Citizens for Resp. & Ethics in Washington v. Dep't of Just.*,
   854 F.3d 675 (D.C. Cir. 2017) ................................................................................................. 7

*Citizens for Resp. & Ethics in Washington v. Dep't of Lab.*,
   478 F. Supp. 2d 77 (D.D.C. 2007) ........................................................................................... 4

*Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   Civ. A. No. 21-2201 (RC), 2022 WL 4182189 (D.D.C. Sept. 13, 2022) ............................ 9, 10

*Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*,
   554 F.3d 1046 (D.C. Cir. 2009) .............................................................................................. 13

*Ctr. for Nat. Sec. Stud. v. Dep't of Just.*,
   331 F.3d 918 (D.C. Cir. 2003) ................................................................................................. 8

*Ctr. for Pub. Integrity v. Off. of Pers. Mgmt.*,
   Civ. A. No. 04-1274, 2006 WL 3498089 n.8 (D.D.C. Dec. 4, 2006) ...................................... 14

*Davis v. Dep't of Just.*,
   968 F.2d 1276 (D.C. Cir. 1992) ......................................................................................... 7, 15

*Defenders of Wildlife v. U.S. Border Patrol*,
   623 F. Supp. 2d 83 (D.D.C. 2009) ........................................................................................... 4

*Dep't of Def. v. Fed. Lab. Rels. Auth.*,
   510 U.S. 487 (1994) ................................................................................................................. 6

*Dep't of State v. Ray*,
  502 U.S. 164 (1991)......................................................................................... 6
*Dep't of State v. Wash. Post Co.*,
  456 U.S. 595 (1982)......................................................................................... 6
*Donato v. Exec. Off. for U.S. Att'ys*,
  308 F. Supp. 3d 294 (D.D.C. 2018)................................................................ 8
*Dunkelberger v. Dep't of Just.*,
  906 F.2d 779 (D.C. Cir. 1990)...................................................................... 15
*Fitzgibbon v. CIA*,
  911 F.2d 755 (D.C. Cir. 1990)...................................................................... 15
*Friedman v. FAA*,
  841 F.3d 537 (D.C. Cir. 2016)...................................................................... 13
*Gardels v. CIA*,
  689 F.2d 1100 (D.C. Cir. 1982)...................................................................... 5
*Goldstein v. Treasury Inspector Gen. for Tax Admin.*,
  172 F. Supp. 3d 221 (D.D.C. 2016).............................................................. 14
*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989)......................................................................................... 7
*Jud. Watch, Inc. v. Dep't of Com.*,
  83 F. Sup. 2d 105 (D.D.C. 1999).................................................................... 7
*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009)................................................................... 5, 6
*McGehee v. CIA*,
  697 F.2d 1095 (D.C. Cir. 1983)...................................................................... 4
*Media Rsch. Ctr. v. Dep't of Just.*,
  818 F. Supp. 2d 131 (D.D.C. 2011)............................................................ 4, 5
*Military Audit Project v. Casey*,
  656 F.2d 724 (D.C. Cir. 1981)........................................................................ 4
*N.Y. Times Co. v. NASA*,
  920 F.2d 1002 (D.C. Cir. 1990)...................................................................... 6
*Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*,
  71 F.3d 885 (D.C. Cir. 1995)................................................................... 8, 10
*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004).......................................................................... 6, 13, 14
*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
  879 F.2d 873 (D.C. Cir. 1989)...................................................................... 15
*People for the Ethical Treatment of Animals ("PETA") v. Nat'l Inst. of Health*,
  745 F.3d 535 (D.C. Cir. 2014)................................................................. 5, 11
*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982)........................................................................ 5
*Phillippi v. CIA*,
  655 F.2d 1325 (D.C. Cir. 1981)................................................................. 1, 3
*Pubien v. Dep't of Just.*,
  273 F. Supp. 3d 47 (D.D.C. 2017)................................................................ 13
*Roth v. Dep't of Just.*,
  642 F.3d 1161 (D.C. Cir. 2011)............................................................. passim

*Sack v. Dep't of Def.,*
  823 F.3d 687 (D.C. Cir. 2016) ....................................................................... 8
*SafeCard Servs., Inc. v. SEC,*
  926 F.2d 1197 (D.C. Cir. 1991) ............................................................. 8, 13
*Schaerr v. Dep't of Just.,*
  435 F. Supp. 3d 99 (D.D.C. 2020) ................................................................ 1
*Schrecker v. Dep't of Just.,*
  349 F.3d 657 (D.C. Cir. 2003) ..................................................................... 10
*Strang v. U.S. Arms Control & Disarmament Agency,*
  864 F.2d 859 (D.C. Cir. 1989) ....................................................................... 7
*Tax Analysts v. IRS,*
  294 F.3d 71 (D.C. Cir. 2002) ......................................................................... 7
*U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.,*
  740 F.3d 195 (D.C. Cir. 2014) ....................................................................... 7
*Wolf v. CIA,*
  473 F.3d 370 (D.C. Cir. 2007) ....................................................................... 5

Statutes

5 U.S.C. § 552(b)(6) ................................................................................... 3, 6
5 U.S.C. § 552(b)(7) ................................................................................... 7, 8
5 U.S.C. § 552(b)(7)(C) ................................................................................... 7
28 U.S.C. §§ 533 ............................................................................................. 9

Rules

Fed. R. Civ. P. 56(a) ...................................................................................... 4

Regulations

28 C.F.R. § 0.85 ............................................................................................. 9

Defendant the Federal Bureau of Investigation ("FBI") respectfully submits this memorandum in support of its motion for summary judgment under Federal Rule of Civil Procedure ("Rule") 56.

Plaintiff Protect the Public's Trust brings this action against the FBI under Freedom of Information Act ("FOIA"), alleging that the FBI has unlawfully withheld records responsive to its FOIA requests seeking various communications between identified Twitter[1] employees and the FBI's National Election Command Post, the Foreign Influence Task Force, and certain FBI employees.  *See generally* Compl., ECF No. 1. Plaintiff's FOIA requests did not include a third-party identity waiver that would allow disclosure of documents regarding a third party, nor did the FOIA requests even attempt to articulate a public interest in disclosure.  Whether or not these records exist, the other named individuals have a substantial privacy interest in the nondisclosure of information about them. Accordingly, the FBI has properly asserted a *Glomar*[2] response in conjunction with FOIA Exemptions 6 and 7(C) to refuse to confirm or deny the existence of records sought by this FOIA request. Thus, summary judgment in the FBI's favor is warranted.

---

[1]     Although the social media platform has been subsequently renamed to "X," for ease of clarity, Defendant refers to it as "Twitter," which is how it is characterized in the FOIA requests at issue.

[2]     As Judge Berman Jackson recently summarized:

The term "*Glomar* response" originates from the CIA's refusal to confirm or deny the existence of records in response to a FOIA request relating to "the *Hughes Glomar Explorer*, a ship used in a classified [CIA] project 'to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications equipment onboard for analysis by United States military and intelligence experts.'"

*Schaerr v. Dep't of Just.*, 435 F. Supp. 3d 99 (D.D.C. 2020) (Berman Jackson, J.) (quoting *Roth v. Dep't of Just.*, 642 F.3d 1161, 1171 (D.C. Cir. 2011), and *Phillippi v. CIA*, 655 F.2d 1325, 1327 (D.C. Cir. 1981)).

# BACKGROUND

The FBI hereby incorporates the accompanying Statement of Undisputed Material Facts and the exhibits thereto, including the Declaration of Michael G. Seidel ("Seidel Decl."), Assistant Section Chief of the Record/Information Dissemination Section, Information Management Division of the FBI, which is attached as Exhibit 1.

At issue in this lawsuit are six separate FOIA requests that Plaintiff submitted to the FBI on March 8, 2023, relating to, generally, communications between employees of Twitter and employees of the FBI.  As to each request, Plaintiff contends that the release "is in the public interest because they will help the public gain clarity on the 'Twitter files.'"  Compl. ¶¶ 8, 16, 24, 34, 44, 54.  The following chart summarizes Plaintiff's FOIA requests by number and subject:

| Request No. | Subject |
|---|---|
| 1585922-000 | From January 1, 2020, through November 30, 2022, records of communications between Twitter employees Patrick Conlon, Stacia Cardille and employees within the FBI's National Election Command Post |
| 1585928-000 | From January 1, 2020, through November 30, 2022, records of communications between Twitter employees Patrick Conlon, Stacia Cardille, and officials within the FBI's Foreign Influence Task Force (FITF). |
| 1585931-000 | From January 1, 2020, through November 30, 2022, records of communications between Yoel Roth (Yoel@twitter.com) and employees within the FBI's Foreign Influence Task Force (FITF). |
| 1585935-000 | From January 1, 2020, through November 30, 2022, records of communications between Yoel Roth (Yoel@twitter.com) and employees within the FBI's National Election Command Post. |
| 1585937-000 | From January 1, 2020, through November 30, 2022, records of communications between Yoel Roth (yoel@twitter.com) and the following FBI officials:<br>a) Fred, San Francisco FBI branch<br>b) Katherine, FBI Private Sector Engagement Squad in San Francisco |
| 1585938-000 | From January 1, 2020, through November 30, 2022, records of communications between Twitter employees Patrick Conlon, Stacia Cardille, and the following FBI officials mentioned in the Twitter Files:<br>a) Fred, San Francisco FBI branch<br>b) Katherine, FBI Private Sector Engagement Squad in San Francisco |

Seidel Decl. ¶ 5, Exs. A-F.

None of the FOIA requests included a privacy waiver for Patrick Conlon, Stacia Cardille, Yoel Roth, or any other third party, nor did they include any other authorization for disclosure of information to a third party or proof of death of any of the identified third parties.  *Id.*  On March 27, 2023, the FBI responded to all six FOIA requests and, relevant here, informed Plaintiff that the requests sought records on one or more third party individuals and that "the FBI would neither confirm nor deny the existence of such records pursuant to" FOIA Exemptions 6 and 7(C).  *Id.* ¶ 7. The FBI notified Plaintiff of its right to appeal the FBI's decision to the Department's Office of Information Policy within ninety days from the date of its response letter.  *Id.*  Plaintiff appealed these responses from the FBI to the Office of Information Policy on June 1, 2023.  *Id.* ¶ 8.  As to Request No. 1585922-000, the Office of Information Policy did not provide a response prior to the lawsuit, and for the remaining five FOIA requests, the Office affirmed the FBI's *Glomar* response. Seidel Decl. ¶¶ 10-15.  The Office specifically advised Plaintiff that "[c]onfirming or denying the existence of such records, including law enforcement records, concerning a third-party individual would constitute a clearly unwarranted invasion of personal privacy, and could reasonably be expected to constitute an unwarranted invasion of personal privacy."  Seidel Decl. Exs. K-M (citing 5 U.S.C. § 552(b)(6), (7)(C)).  Additionally, the Office of Information Policy noted that "it is reasonably foreseeable that confirming or denying the existence of such records would harm the interests protected by these exemptions."  Seidel Decl. Exs. K-M.

Plaintiff initiated the instant action on November 3, 2023, challenging the Department's *Glomar* response.  *See generally* Compl.  Defendant answered on January 26, 2024.  *See* Answer, ECF No. 7.  Following that, the parties proposed a schedule to brief the FBI's invocation of the FBI's *Glomar* response. Mar. 1, 2024, Jt. Status Rep., ECF No. 9.

**LEGAL STANDARD**

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  It is up to the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations.  *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).  "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears

'logical' or 'plausible.'" *Media Rsch.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982). "In certain cases, merely acknowledging the existence of responsive records would itself 'cause harm cognizable under [a] FOIA exception.'" *People for the Ethical Treatment of Animals ("PETA") v. Nat'l Inst. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007), in turn quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)). "In that event, an agency can issue a *Glomar* response, refusing to confirm or deny its possession of responsive documents." *Id.* Neither a "search for responsive records" nor the submission of a "*Vaughn* index" is required for a *Glomar* response to be held valid because the *Glomar* response "narrows the FOIA issue to the existence of records vel non." *Wolf*, 473 F.3d at 374 n.4. "A *Glomar* response is valid 'if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *PETA*, 745 F.3d at 540 (quoting *Wolf*, 473 F.3d at 374). "Courts can grant summary judgment upholding a *Glomar* response based on agency affidavits explaining the basis for the response." *Id.* The agency's explanatory burden is not demanding, and the standard is, ultimately, no different than in the typical FOIA case: "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf*, 473 F.3d at 374–75 (quoting *Gardels*, 689 F.2d at 1105).

## ARGUMENT

The FBI properly refused to deny or confirm the existence of records pertaining to third-parties that would be exempt from disclosure pursuant to FOIA Exemptions 6 and 7(C). The FBI issued a *Glomar* response because to confirm the existence or non-existence of responsive records would reveal personal information that the FOIA exemptions are intended to protect. *See, e.g.*,

*Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009); *Roth v. Dep't of Just.*, 642 F.3d 1161, 1171 (D.C. Cir. 2011). The response is in recognition that in some circumstances a FOIA request can by its very terms be limited to privacy-sensitive information pertaining to an identified individual or is necessary to protect the privacy interest of individuals who are named in investigatory records. Seidel Decl. ¶ 20. The FBI explained in its declaration that FBI long standing policy has been to assert a *Glomar* response, neither confirming nor denying the existence of records pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (b)(7)(C), where a requester seeks access to information regarding a third party but fails to provide a privacy waiver from the third party, a proof of death of that third party, or a showing that the public interest outweighs the privacy interest of the third party. Seidel Decl. ¶¶ 18-20.

## I.   THE DEPARTMENT'S *GLOMAR* RESPONSE WAS PROPER UNDER EXEMPTIONS 6 AND 7(C)

FOIA Exemption 6 exempts disclosure of information contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted Exemption 6 broadly, making clear that the statutory language files "similar" to personnel or medical files encompasses any "information which applies to a particular individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *see also N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (finding voice tapes from the shuttle Challenger to be "similar files"). Highly personal information has been held to be exempt from disclosure under FOIA Exemption 6. *See, e.g., Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) (photographs of the suicide of Deputy White House Counsel Vincent Foster); *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994) (addresses); *Dep't of State v. Ray*, 502 U.S. 164, 175-76 (1991) (names and addresses, marital and employment status, information regarding children); *Wash. Post*, 456 U.S. at 602 (passport

information); *Jud. Watch, Inc. v. Dep't of Com.*, 83 F. Sup. 2d 105, 112 (D.D.C. 1999) (date of birth, visa, and passport data); *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 747 (9th Cir. 1979) (religious affiliation).

To be a law enforcement record under Exemption 7, the record must have been "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  "The term 'law enforcement' in Exemption 7 refers to the act of enforcing the law, both civil and criminal."  *Pub. Emps. for Env't Resp. ("PEER") v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014) (citing *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002)).  Additionally, the term encompasses "the enforcement of national security laws as well."  *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 862 (D.C. Cir. 1989).  "According to the Supreme Court, the term 'compiled' in Exemption 7 requires that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption."  *PEER*, 740 F.3d at 203 (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 155 (1989)).

Because Exemption 7(C) is broader than Exemption 6, there is no need to consider Exemption 6 if the records at issue are law enforcement records.  *See CREW v. Dep't of Just.*, 854 F.3d 675, 681 (D.C. Cir. 2017); *Roth*, 642 F.3d at 1173.  Exemption 7(C) provides protection for law enforcement information the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In assessing an agency's invocation of Exemption 7(C), the Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information."  *Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).

That said, the D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1202 (D.C. Cir. 1991). Indeed, "it is by now well established that, under Exemption 7(C), 'a *Glomar* response may be issued in place of a statement acknowledging the existence of responsive records but withholding them, if confirming or denying the existence of the records would associate the individual named in the request with criminal activity.'" *Donato v. Exec. Off. for U.S. Att'ys*, 308 F. Supp. 3d 294, 310 (D.D.C. 2018) (Brown Jackson, J.) (granting summary judgment on *Glomar* response under Exemption 7(C)) (quoting *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995)).

## A.     Any Responsive Records Would Be Law Enforcement Records

As a threshold matter, Exemption 7(C)'s heightened protections apply here because any responsive records necessarily would have been "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). "Exemption 7 uses the term 'law enforcement' to describe the act of enforcing the law, both civil and criminal." *Sack v. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016) (internal quotation marks omitted). "To show that the disputed documents were compiled for law enforcement purposes," an agency "need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks omitted). When an agency "specializ[es] in law enforcement, its claim of a law enforcement purpose is entitled to deference." *Ctr. for Nat. Sec. Stud. v. Dep't of Just.*, 331 F.3d 918, 926 (D.C. Cir. 2003) (internal quotation marks omitted).

The FBI is without a doubt a law-enforcement agency.  Pursuant to 28 U.S.C. §§ 533 and 534, Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations, and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government, with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency; to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security; and to further the foreign intelligence objectives of the United States.  *See Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*, 74 F. Supp. 3d 158, 178 (D.D.C. 2014) (holding that the FBI is a law-enforcement agency).

Additionally, responsive records, should any exist, would have been collected and maintained by the FBI as part of its law enforcement mission—specifically, law enforcement matters related to foreign adversary influence operations (in the case of the FBI's Foreign Influence Task Force) and election-related threats (in the case of the FBI's National Election Command Post).  Seidel Decl. ¶¶ 16-17.  In other words, responsive records—were any to exist—would "relate to the law enforcement matters which they handle or support as part of their official duties" in furtherance of the FBI's law enforcement mission, and thus "likely would pertain to investigative matters under the employees' purview."  *Id.* ¶ 17.

This explanation, which merits deference, furnishes the "rational nexus," *Blackwell*, 646 F.3d at 40, needed to establish that any responsive records would be law enforcement records triggering Exemption 7(C)'s protection.  *See id.* ("The FBI here says that the files requested by Blackwell were compiled for law enforcement purposes under that standard. The FBI's assertion is entitled to deference[.]");

*Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, Civ. A. No. 21-2201 (RC), 2022 WL 4182189, at *6 (D.D.C. Sept. 13, 2022) (agency's attestation that "to the extent records responsive to Plaintiff's request exist, they would have been compiled by [that agency], a law enforcement agency, during the course of a valid law enforcement investigation" was "entitled to deference" and "not controverted by either contrary evidence in the record nor by evidence of agency bad faith" (cleaned up)).

### B.     The Subjects of Plaintiff's FOIA Requests Have a Strong Privacy Interest in Any Potential Responsive Records

The subjects of Plaintiff's FOIA requests—certain alleged Twitter and FBI employees— "would officially confirm the presence of the third-party individuals' names in FBI communications, and would cause unwarranted invasion of privacy of the third-party individuals." Seidel Decl. ¶ 24. "Both the FBI employees and the Twitter employees have a strong privacy interest in any potentially responsive records that may or may not exist." *Id.* The names of third parties in law enforcement records are almost always exempt from disclosure. *See SafeCard Servs.*, 926 F.2d at1206 ("[w]e now hold categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure.").

The privacy interest at stake in any responsive records is even weightier if this Court conclude—as it should—that they are law enforcement records. The D.C. Circuit has "long recognized" that "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Roth v. Dep't of Just.*, 642 F.3d 1161, 1174 (D.C. Cir. 2011) (internal quotation marks omitted); *accord Schrecker v. Dep't of Just.*, 349 F.3d 657, 666 (D.C. Cir. 2003) (same). "Individuals have an obvious privacy interest

cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just*., 746 F.3d 1082, 1091 (D.C. Cir. 2014) (cleaned up); *accord Nation Mag.*, 71 F.3d at 894 (same). The "privacy interest held by the targets of law-enforcement investigations in ensuring that their relationship to the investigations remains secret" thus is "substantial." *PETA*, 745 F.3d at 541 (cleaned up). Merely "acknowledging [a law enforcement] investigation of [an individual] would go to the heart of the privacy interest that Exemption 7(C) was designed to protect." *Id.* (cleaned up). "Indeed, there can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that [an] individual was the subject of a law enforcement investigation." *Id.* at 542 (cleaned up).

Here, "[o]fficial confirmation" of the involvement of the alleged FBI employees "could cause these individuals unnecessary, unofficial questioning as to their conduct in investigative matters, could trigger hostility toward particular FBI employees, and could open FBI employees up to targeting by the public or foreign adversaries, or expose them to harassment." Seidel Decl. ¶ 24. Moreover, the Twitter employees implicated in the FOIA requests also hold substantial privacy interests in any responsive records that may or may not exist because official acknowledgement of responsive records "could lead to legal or economic detriment, or could have negative professional and social repercussions for these individuals." *Id.*   "We have thus held that not only the targets of law-enforcement investigations, but also witnesses, informants, and . . . investigating agents have a substantial interest in ensuring that their relationship to the investigations remains secret." *Id.* (cleaned up).

For these reasons, third parties hold substantial privacy interest in any responsive records that might or might not exist.  *See Roth*, 642 F.3d at 1178 ("merely acknowledging that the FBI has information regarding [certain individuals] would . . . imping[e] on their privacy").

**C.    Plaintiff Fails to Identify a Significant Public Interest in Disclosure**

By contrast, Plaintiff failed to identify a significant public interest in disclosure in the category of records sought.  Seidel Decl. ¶ 25.  Here, Plaintiff seeks records of communications between certain third-party employees of Twitter and FBI employees that—if such records were to exist—would concern third parties that have a substantial privacy interest in avoiding the negative consequences associated with official acknowledgement of responsive records, including "negative and unwanted attention," "harassing inquiries," and other stigmatization. *Id.* ¶ 24.  Here, Plaintiff has failed to include a privacy waiver for any of the Twitter employees or alleged FBI employee. *Id.* ¶ 23.

Moreover, Plaintiff has failed to demonstrate a legally sufficient public interest.  In its Complaint, Plaintiff alleges that "the release of the documents would assist in the public's determination of whether actions by agents of the federal government violated the First Amendment rights of American citizens."  Compl. ¶ 8.  That allegation is belied by the material that Plaintiff includes in the Complaint.  For example, Plaintiff cites a statement in response to the reporting on the "Twitter files" that:

> The correspondence between the FBI and Twitter show nothing more than examples of our traditional, longstanding and ongoing federal government and private sector engagements, which involve numerous companies over multiple sectors and industries. As evidenced in the correspondence, the FBI provides critical information to the private sector in an effort to allow them to protect themselves and their customers.

*Id.* ¶ 11.  This is confirmed by the images that Plaintiff alleges are correspondence between FBI employees and Twitter employees.  *See id.* ¶ 8 (citing (1) a Dec. 24, 2022, tweet reflecting an

undated communication flagging Twitter accounts and handles that "may violate [Twitter's] terms of service and wanted to bring them to your attention and (2) a Nov. 3, 2020, email about searches for violations of Twitter's terms of service.  And, in the cited deposition, the FBI witness testified under oath that "we never told the companies to modify their terms of service or community standards."  Chan Dep. Tr. 92:5-7 (cited in Compl. ¶ 10).

This falls short of Plaintiff's obligation in challenging the FBI's *Glomar* response. "[W]here there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." *NARA v. Favish*, 541 U.S. 157, 174 (2004).  That is because "[a]llegations of government misconduct are easy to allege and hard to disprove," after all, "so courts must insist on a meaningful evidentiary showing." *Id.* at 175 (cleaned up); *see also Banner Health v. Price*, 867 F.3d 1323, 1348 (D.C. Cir. 2017) ("agency proceedings enjoy a presumption of regularity." (internal quotation marks omitted)); *Friedman v. FAA*, 841 F.3d 537, 541 n.1 (D.C. Cir. 2016) ("Without evidence to the contrary, we must presume an agency acts in good faith." (cleaned up)).

Rather, the requester must offer "compelling evidence that the agency denying the FOIA request is engaged in illegal activity" and that "access to the names of private individuals appearing in the agency's law enforcement files is necessary to confirm or refute that evidence." *SafeCard Servs.*, 926 F.2d at 1205–06.  "Only when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Favish*, 541 U.S. at 174-75. Otherwise, "there is no reason to believe that the incremental public interest in such information

- 13 -

would ever be significant," and the information is exempt from disclosure.  *SafeCard Servs.*, 926 F.2d at 1206.

While *Favish* arose in the context of Exemption 7(C), "the rationale . . . for requiring more than unsupported allegations that an agency is not doing its job applies under FOIA Exemption 6 as well." *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1055 n.5 (D.C. Cir. 2009); *see also Pubien v. Dep't of Just.*, 273 F. Supp. 3d 47, 54 (D.D.C. 2017) ("Although *Favish* involved FOIA Exemption 7(C), rather than Exemption 6, the Court of Appeals has deemed the privacy inquiry of Exemptions 6 and 7(C) to be essentially the same." (internal quotation marks omitted)); *Goldstein v. Treasury Inspector Gen. for Tax Admin.*, 172 F. Supp. 3d 221, 233 n.3 (D.D.C. 2016) ("*Favish*, of course, was an Exemption 7(C) case, but the court can discern no principled reason why the evidentiary standard articulated there would not apply equally to Exemption 6 cases."); *Ctr. for Pub. Integrity v. Off. of Pers. Mgmt.*, Civ. A. No. 04-1274, 2006 WL 3498089, at *5 n.8 (D.D.C. Dec. 4, 2006) ("Although the context in *Favish* was FOIA Exemption 7(C), there is no reason why the character of the disclosure interest should be different under exemption 6." (cleaned up)); *Cawthon v. Dep't of Just.*, Civ. A. No. 05-0567, 2006 WL 581250, at *3 n.7 (D.D.C. Mar. 9, 2006) ("Although *Favish* concerned exemption 7(C), the same balancing standard applies to exemption 6." (cleaned up)).

Here, Plaintiff generically alleges a vague public interest in exploring whether "agents of the federal government violated the First Amendment rights of American citizens," *see* Compl. ¶ 8, but then includes evidence in the Complaint undermining that contention.  As such, Plaintiff does not "come close to meeting the demanding *Favish* standard for challenging the FBI's invocation of FOIA Exemption 7(C)."  *Blackwell*, 646 F.3d at 41; *see also Beck v. Dep't of Just.*, 997 F.2d 1489, 1494 (D.C. Cir. 1993) ("there is no evidence, let alone any public knowledge, that

wrongdoing has occurred.  Beck has failed, in short, to identify any such public interest in this case.").

### D.     The Privacy Interests in Any Responsive Records Outweighs Any Public Interest in Their Disclosure

Under either Exemption 7(C) or Exemption 6, the privacy interest in any responsive records that might exist outweighs any public interest in their disclosure.  The balancing in this case is straightforward because Plaintiff does not establish a legitimate public interest in disclosure of the information. *See Favish*, 541 U.S. at 172 (discussing requester's burden).  Because Plaintiff cannot do so, any invasion of those privacy interests that disclosure would cause necessarily is (1) unwarranted and (2) clearly so.  *See Boyd v. Dep't of Just.*, 475 F.3d 381, 388 (D.C. Cir. 2007) ("Absent evidence to support most of the alleged improprieties, and clearly not enough for a reasonable person to conclude that the remaining allegations of government malfeasance might be true, there is no counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records, and thus the challenge to the government's invocation of Exemption 7(C) fails" (cleaned up)); *Beck*, 997 F.2d at 1494 (no balancing necessary where "the request implicates no public interest at all"); *Davis v. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) ("even if a particular privacy interest is minor, nondisclosure remains justified where, as here, the public interest in disclosure is virtually nonexistent"); *Dunkelberger v. Dep't of Just.*, 906 F.2d 779, 781 (D.C. Cir. 1990) ("As there is nothing to be placed in the balance against [an employee's] general interest in preserving the confidentiality of his personnel files, we conclude that no invasion of [the employee's] privacy is warranted, however slight."); *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) ("We need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time."); *Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990) (same).

Accordingly, the FBI properly concluded that a *Glomar* response here was necessary to protect the individuals' considerable privacy interests, which were not outweighed by the public interest in disclosing whether responsive records exist.

\*   \*   \*

**CONCLUSION**

For the reasons set forth above, Defendant respectfully requests that this Court grant

summary judgment in its favor on Plaintiff's FOIA request.

Dated: May 3, 2024                          Respectfully submitted,
       Washington, DC

                                      MATTHEW M. GRAVES, D.C. Bar #481052
                                      United States Attorney

                                      BRIAN P. HUDAK
                                      Chief, Civil Division

                                      By:        */s/ Stephen DeGenaro*
                                          STEPHEN DEGENARO
                                        D.C. Bar #1047116
                                        Assistant United States Attorney
                                        601 D Street, NW
                                        Washington, DC 20530
                                        (202) 252-7229
                                        Stephen.DeGenaro@usdoj.gov

                                      *Attorneys for the United States of America*